**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL AMBROSE et al.,**

                **Plaintiffs,**             **5:13-cv-93
                                                            (GLS/TWD)**

                    **v.**

**INTERNATIONAL
BROTHERHOOD OF
ELECTRICAL WORKERS
LOCAL #43 AND ELECTRICAL
CONTRACTORS' WELFARE
FUND,**

                **Defendant.**
_____

## SUMMARY ORDER

## I. Introduction

      Plaintiffs Michael and Joshua Ambrose filed the instant action against defendant International Brotherhood of Electrical Workers Local #43 and Electrical Contractors' Welfare Fund ("the Fund"), seeking equitable and declaratory relief pursuant to 29 U.S.C. § 1132(a)(3). (*See* Compl. ¶ 1, Dkt. No. 1.) Presently before the court is plaintiffs' motion for a preliminary injunction, on which both parties submitted papers, and argument was heard on February 8, 2013. (*See* Dkt. Nos. 2, 6, 8.) For the reasons that follow, plaintiffs' motion is granted.

## II. **Background**[1]

Michael Ambrose and his son, Joshua, are a participant and a beneficiary, respectively, of the Fund. (*See* Compl. ¶ 5.) Following burn injuries suffered by Joshua, the Fund paid $52,204.88 in emergency medical expenses. (*See id.* ¶¶ 14, 20.) In August 2012, at the request of the Fund, Michael Ambrose and his attorney signed a "Third Party Liability Form," which "acknowledge[d] the existence of a lien in the event of a financial recovery from a third-party." (*Id.* ¶ 17; Dkt. No. 8, Attach. 2 at 2.) Joshua received a pre-lawsuit settlement of $100,000 from the responsible third party's insurance carrier, from which his attorney claimed a $25,000 legal fee. (*See* Compl. ¶¶ 16, 19, 23.) From the $100,000 settlement, the Fund insists on full reimbursement of the $52,204.88 which it paid on Joshua's behalf. (*See* Compl. ¶ 21.) On January 4, 2013, the Fund informed plaintiffs that, if they failed to remit the entire $52,204.88 within thirty days, the Trustees of the Fund had "'the authority to offset the amount owed from any benefit payments made to or on behalf of [Michael Ambrose], his spouse or dependents,'" and that, as of that date, it was

---

[1] As there are no apparent disputes as to material facts, the court assumes the parties' familiarity with the events giving rise to this action, and provides only a brief factual summary.

2

holding "'payment of such medical claims in abeyance pending receipt'" of the full payment.  (*Id.* ¶ 27.)

On January 31, 2013, this court issued an Order temporarily restraining and enjoining "the Fund, its officers, directors, partners, affiliates, members, agents, employees, assigns, and any other entities or individuals acting on its behalf," from "directly or indirectly denying medical bills and invoices submitted by Michael Ambrose and his dependents' medical providers, for reason of non-payment of the disputed $52,204.88 in medical expenses."  (Dkt. No. 6 at 2.)  This court further ordered plaintiffs' counsel to "hold the Fund's alleged lien, in the amount of $52,204.88, in escrow pending" a scheduled preliminary injunction hearing.  (*Id.* at 3.)

## II. Discussion

"[P]reliminary injunctive relief is an extraordinary remedy and should not be routinely granted." *Patton v. Dole*, 806 F.2d 24, 28 (2d Cir. 1986). "In most cases, to warrant the issuance of a preliminary injunction, a movant must show (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits, and a balance of hardships tipping decidedly in favor of the moving party." *Phelan v. Hersh*, No. 9:10-CV-0011, 2010 WL 277064,

3

at *5 (N.D.N.Y. Jan. 20, 2010) (citing *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006)).

### A.   Irreparable Harm

Michael Ambrose contends that the Fund's "threat to stop paying any future medical bills has caused [him] and [his] wife great anxiety given [their] modest income and the potential for irreparable financial harm should either of [them] or [their] children encounter the need for medical coverage." (Dkt. No. 2, Attach. 4 ¶ 15.)  The Fund contends that such emotional distress "does not constitute irreparable injury warranting injunctive relief." (Dkt. No. 8, Attach. 4 at 3.)  While irreparable injury is "certain and imminent harm for which a monetary award does not adequately compensate," *Wisdom Import Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113 (2d Cir. 2003), the Second Circuit has found that the threat of reduction or termination of medical benefits is sufficient to satisfy the irreparable injury prong, *see Whelan v. Colgan*, 602 F.2d 1060, 1062 (2d Cir. 1979) (stating that "the threatened termination of benefits such as medical coverage for workers and their families obviously raised the spectre of irreparable injury"); *see also LaForest v. Former Clean Air Holding Co., Inc.*, 376 F.3d 48, 55-58 (2d Cir. 2004); *Commc'ns Workers of*

4

*Am., Dist. One, AFL-CIO v. NYNEX Corp.*, 898 F.2d 887, 892 (2d Cir. 1990)*.* As such, in light of the Fund's threat to offset future medical expenses by the value of the alleged lien, plaintiffs have alleged sufficient irreparable harm.

**B.     Likelihood of Success or Sufficiently Serious Question**

Plaintiffs claims are predicated on an argument that, in assessing the amount owed to the Fund, the court should consider equitable factors such as the make-whole doctrine[2] and the common fund doctrine.[3] (*See* Compl. ¶ 30.)  Plaintiffs contend that the question of whether such equitable factors may be considered by the court will be answered in the Supreme Court's impending decision in *U.S. Airways, Inc. v. McCutchen,* 663 F.3d 671 (3d Cir. 2011), *cert. granted,* 133 S. Ct. 36 (2012), which was argued on November 27, 2012.  (*See id.* ¶¶ 24-26.)  Defendants argue that, even if

---

[2] "Under the make-whole doctrine, an insured who has settled with a third-party tortfeasor is liable to the insurer-subrogee only for the excess received over the total amount of his loss."  *Zurich Am. Ins. Co. v. O'Hara*, 604 F.3d 1232, 1236 (11th Cir. 2010) (internal quotation marks and citation omitted).

[3] The common fund doctrine provides that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

5

the court is permitted to consider equitable doctrines, in light of the expeditious third-party settlement, and the $25,000 legal fee which plaintiffs' counsel is receiving, "no court awarding appropriate equitable relief in the pending case would determine that [the Fund] had been unjustly enriched by the efforts of Plaintiffs' counsel." (Dkt. No. 8, Attach. 4 at 2.)  The court concludes, however, that the facts presented and the Supreme Court's forthcoming decision in *U.S. Airways, Inc.*, create sufficiently serious questions going to the merits.[4]  Furthermore, as plaintiffs face the possible loss of medical benefits, while the Fund risks delay in payment, the balance of hardships tips in plaintiffs' favor.  Plaintiffs have therefore made a sufficient showing to warrant the issuance of a preliminary injunction.

**ACCORDINGLY**, it is hereby

**ORDERED** that plaintiffs' motion for a preliminary injunction (Dkt. No.

---

[4] The Fund also argues that the doctrine of unclean hands forecloses the use of equitable defenses by plaintiffs, reasoning that plaintiffs "are tarnished by their own lack of candor in agreeing to repay benefits to the [Fund] while simultaneously planning to avoid the [Fund's] lien." (Dkt. No. 8, Attach. 4 at 3.)  The court finds this argument unpersuasive at this juncture, however, because, as the Fund admits, plaintiffs' attorney made his position clear when returning to the Fund's third-party administrator plaintiffs' third-party liability form.  (*See* Dkt. No. 8 ¶ 15; Dkt. No. 8, Attach. 2 at 2, 6.)

2) is **GRANTED**; and it is further

**ORDERED** that the Fund, its officers, directors, partners, affiliates, members, agents, employees, assigns, and any other entities or individuals acting on its behalf, are **PRELIMINARILY RESTRAINED AND ENJOINED** from directly or indirectly denying medical bills and invoices submitted by Michael Ambrose and his dependents' medical providers, for reason of non-payment of the disputed $52,204.88 in medical expenses, pursuant to the ERISA health care plan which Michael Ambrose is a member and his family members are dependents; and it is further

**ORDERED** that plaintiffs' counsel shall hold the Fund's alleged lien, in the amount of $52,204.88, in escrow during the pendency of this Order; and it is further

**ORDERED** that plaintiffs' motion for a preliminary injunction (Dkt. No. 2) is **DENIED** to the extent that it requests attorneys' fees; and it is further

**ORDERED**, that, following the issuance of the Supreme Court's decision in *U.S. Airways, Inc. v. McCutchen,* 663 F.3d 671 (3d Cir. 2011), *cert. granted,* 133 S.Ct. 36 (2012), the parties shall file with the court a status update as soon as is practicable, but no later than forty-five (45) days thereafter; and it is further

7


**ORDERED** that the Clerk provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

February 13, 2013
Albany, New York